[Cite as *State v. Muncy*, 2012-Ohio-4563.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

STATE OF OHIO,                         :
                                       :
        Plaintiff-Appellee,            :      Case No. 11CA3434
                                       :
        v.                             :
                                       :
JOHN L. MUNCY, JR.,                    :      DECISION AND
                                       :      JUDGMENT ENTRY
        Defendant-Appellant.           :
                                       :      Filed:  September 27, 2012
_____

APPEARANCES:

Gene Meadows, Portsmouth, Ohio, for Appellant.

Mark E. Kuhn, Scioto County Prosecuting Attorney, Portsmouth, Ohio, for Appellee.
_____

Kline, J.:

{¶1}    John L. Muncy, Jr., (hereinafter "Muncy") appeals the judgment of the Scioto County Court of Common Pleas.  After a jury trial, Muncy was convicted of five separate crimes.  And on appeal, Muncy initially contends that the trial court should have declared a mistrial during voir dire.  We disagree.  Because a fair trial was still possible, the trial court did not abuse its discretion by continuing the trial.  Next, Muncy contends that the trial court erred in admitting certain evidence.  Because the complained-of evidence was admissible under both Evid.R. 403(A) and Evid.R. 404(B), we disagree.  Finally, Muncy contends that his conviction for felonious assault is against the manifest weight of the evidence.  We disagree because the jury could have reasonably concluded that Muncy's guilt had been proven beyond a reasonable doubt.

Accordingly, we overrule Muncy's assignments of error and affirm the judgment of the trial court.

I.

{¶2}    On January 9, 2011, Sergeant Mike Hamilton tried to pull over the truck that Muncy was driving.  But Muncy did not pull over.  Instead, he led Sergeant Hamilton on a high-speed chase throughout Scioto County.  During the chase, Muncy stopped his truck in the middle of a road.  This caused Sergeant Hamilton to stop his cruiser two-to-three car lengths behind Muncy's truck.  Muncy then put his truck into reverse and rammed into Sergeant Hamilton's cruiser.  As a result of the collision, Sergeant Hamilton was transferred to a hospital and treated for various injuries.

{¶3}    After being apprehended, Muncy gave a statement to the police.  Muncy explained that he was a driver for a drug-running operation and that he was ordered to run from law enforcement.  Eventually, Muncy was charged with the following crimes: (1) felonious assault on a peace officer, (2) failure to comply with order or signal of police officer, (3) receiving stolen property/motor vehicle, (4) vandalism, (5) possession of criminal tools, and (6) obstructing official business.

{¶4}    This case proceeded to a jury trial.  During voir dire, one of the potential jurors mentioned that he had worked at the county jail.  The potential juror also mentioned that he knew somebody involved in the case, but the potential juror did not say who that person was.  As a result, the potential juror was excused from the case, and the trial court judge gave the remaining jurors a curative instruction.

**{¶5}**   Before trial, Muncy filed a motion in limine to exclude his statement about being part of a drug-running operation.  The trial court denied the motion, and at trial, the statement was admitted over Muncy's renewed objection.

**{¶6}**   Following Muncy's trial, the jury found him guilty of all charges except for possession of criminal tools.  The trial court then sentenced Muncy to a total combined prison term of 12 years and 6 months.

**{¶7}**   Muncy appeals and asserts the following assignments of error: I. "The trial court erred to the prejudice of the Defendant by failing [to] declare a mistrial after a potential jury member stated he knew the Defendant-Appellant from the time the Defendant-Appellant was in jail."  II. "The trial court abused its discretion when it failed to grant the motion in limine filed by the Defendant-Appellant to exclude evidence of other acts as presented on a statement by the Defendant-Appellant."  And III. "The verdict and conviction for felonious assault is against the manifest weight of the evidence presented at trial."

I.

**{¶8}**   In his first assignment of error, Muncy contends that the trial court should have declared a mistrial based on a statement made during voir dire.

**{¶9}**   "Our analysis begins with the well-settled premise that the decision whether to grant a mistrial rests within a trial court's sound discretion, and its decision will not be reversed absent an abuse of that discretion."  *State v. Daniels*, 4th Dist. No. 11CA3423, 2011-Ohio-5603, ¶ 10.  An abuse of discretion connotes more than a mere error of judgment; it implies that the court's attitude is arbitrary, unreasonable, or unconscionable.  *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

Moreover, "the granting of a mistrial is necessary only when a fair trial is no longer possible." *State v. Treesh*, 90 Ohio St.3d 460, 480, 739 N.E.2d 749 (2001).

{¶10} During voir dire, the trial court judge had the following exchange with Juror 5:

> THE COURT: Have you been able -- been able to hear all the questions that have been asked so far?
>
> JUROR 5: Yes, sir.
>
> THE COURT: Any of those questions cause you any concern?
>
> Juror 5: I do know the -- and I spent the -- almost six months over at the county jail working over there. Transcript at 57-58.

After that exchange, the trial court instructed the remaining jurors as follows: "Now, the comment that [Juror 5] made about a jail that -- you -- the jury is ordered to disregard that comment, because this gentleman stands charged with this offense, and we don't even have any idea what he was talking about. Okay. So you're to disregard the fact that he made that statement regarding jail." *Id.* at 60.

{¶11} Muncy interprets Juror 5's statement as somehow acknowledging "that [Juror 5] was familiar with the Defendant-Appellant from where the Defendant-Appellant was in jail." Brief of Defendant-Appellant at 4. Accordingly, based on Juror 5's statement, Muncy contends (1) that the jury pool was tainted and (2) that the trial court should have declared a mistrial.

{¶12} Here, we find that continuing the trial was within the trial court's discretion. First, because Juror 5 did not reference Muncy by name, we believe that Juror 5's statement is ambiguous. As result, we cannot necessarily infer that Juror 5 was claiming to know Muncy. Juror 5 could have been claiming to know any number of people. For example, based on his reference to working at the county jail, Juror 5 could have been stating that he knew one of the police officers involved in the case. Therefore, we cannot say with certainty that Muncy was prejudiced by Juror 5's statement. *See generally State v. Rhines*, 2d Dist. No. 23486, 2010-Ohio-3117, ¶ 45 (stating that appellate courts do not reverse verdicts on speculation). Furthermore, the trial court gave the remaining jurors a curative instruction, and "[c]urative instructions are generally presumed to remove any prejudice." *State v. Hairston*, 4th Dist. No. 06CA3081, 2007-Ohio-3880, ¶ 33, citing *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 220. Especially considering the ambiguous nature of Juror 5's statement, we find that the trial court acted within its discretion by giving a curative instruction instead of declaring a mistrial. In other words, we believe that a fair trial was possible even after Juror 5 mentioned working at the county jail.

{¶13} Accordingly, we overrule Muncy's first assignment of error.

III.

{¶14} In his second assignment of error, Muncy contends that the trial court should have excluded his statement to the police. After being apprehended, Muncy told the police (1) that he was a driver for a drug-running operation and (2) that he was ordered to run from law enforcement. Muncy argues that this statement should have been excluded because it contains evidence of other bad acts.

**{¶15}** "We review a trial court's decisions regarding the admission of evidence under an abuse of discretion standard of review." *State v. Osman*, 4th Dist. No. 09CA36, 2011-Ohio-4626, ¶ 95, citing *State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, 813 N.E.2d 637, ¶ 79.

**{¶16}** "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B).  For other-acts evidence to be admissible, a trial court must determine (1) that the other act is relevant to the crime in question and (2) that evidence of the other act is relevant to an issue placed in question at trial.  *Osman* at ¶ 95, citing *State v. McCornell*, 91 Ohio App.3d 141, 146, 631 N.E.2d 1110 (8th Dist.1993).  "Additionally, before allowing the admission of any relevant evidence, a trial court must comply with Evid.R. 403(A), which expressly requires the exclusion of evidence 'if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.'" *State v. Warner*, 8th Dist. No. 95750, 2011-Ohio-4096, ¶ 23, quoting Evid.R. 403(A).

**{¶17}** We find that Muncy's statement to the police demonstrates proof of motive.  One of the charges against Muncy was "failure to comply with order or signal of police officer."  And under R.C. 2921.331(B), "No person shall operate a motor vehicle so as *willfully* to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop."  (Emphasis added.)  Here, we believe that Muncy's statement is relevant as to whether he acted willfully.

During opening arguments, Muncy's attorney claimed that "[t]hey're not going to be able to prove that [Muncy] willfully fled from the police officer." Transcript at 111. But in his statement to the police, Muncy explained that he was part of a drug-running operation along with three other drivers. Muncy also explained that he ran from the police because "that's what we're supposed to do, every one of us." Transcript at 118. Therefore, Muncy's statement demonstrates his motive for willfully fleeing from the police -- because Muncy's bosses in the drug-running operation instructed him to flee. Accordingly, Muncy's involvement in the drug-running operation was relevant to both (1) the crime of failure to comply and (2) the issue of whether Muncy willfully fled from the police.

{¶18} Finally, we do not believe that the probative value of Muncy's statement was substantially outweighed by the danger of unfair prejudice. We acknowledge that, in his statement, Muncy admitted to handling large quantities of oxycodone, percocet, and heroin. Muncy also admitted to running a "bunch of guns and sh-- like that[.]" *Id.* at 117. Nevertheless, we find that the other-acts evidence was admissible. Because the defense intended to challenge whether Muncy acted willfully, it was relevant for the jury to consider why he fled from the police. In other words, the state was entitled to present evidence that Muncy's bosses in the drug-running operation instructed him to flee. And by learning of Muncy's motive for fleeing, the jury would necessarily infer that he was an active criminal. Therefore, we cannot find that Muncy was unfairly prejudiced simply because the jury heard the precise nature of his criminal activities.

**{¶19}** For the foregoing reasons, we find that the trial court did not abuse its discretion by admitting Muncy's statement into evidence. As a result, we overrule Muncy's second assignment of error.

IV.

**{¶20}** In his third assignment of error, Muncy contends that his felonious assault conviction is against the manifest weight of the evidence. Essentially, Muncy argues that the state did not prove two essential elements of felonious assault.

**{¶21}** Although his third assignment of error references manifest weight, Muncy concludes his argument by saying that "the conviction is not supported by the evidence[.]" Brief of Defendant-Appellant at 9. Muncy also claims that his "conviction should be reversed and the case dismissed based upon the insufficiency of the evidence." *Id.* As a result, Muncy's third assignment of error is somewhat unclear -- we cannot determine whether he is advancing a manifest-weight argument or a sufficiency-of-the-evidence argument. *See generally State v. Bonneau*, 8th Dist. No. 97565, 2012-Ohio-3258, ¶ 24-25 (comparing the tests for manifest weight and sufficiency). Here, we choose to review Muncy's third assignment of error under a manifest-weight standard. And because we overrule this assignment of error based on the manifest weight, we need not address the sufficiency of the evidence. *See State v. Evans*, 4th Dist. No. 10CA1, 2012-Ohio-1562, ¶ 56 ("[A] determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency."), quoting *Lakewood v. Dorton*, 8th Dist. No. 81043, 2003-Ohio-1719, ¶ 32.

**{¶22}** In a manifest-weight-of-the-evidence review, we "will not reverse a conviction where there is substantial evidence upon which the [trier of fact] could

reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." *State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304 (1988), paragraph two of the syllabus. *Accord State v. Smith*, 4th Dist. No. 06CA7, 2007-Ohio-502, ¶ 41. We "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted." *Id.*, citing *State v. Garrow*, 103 Ohio App.3d 368, 370-371, 659 N.E.2d 814 (4th Dist.1995); *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). But "[o]n the trial of a case, * * * the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

**{¶23}** Here, we find that substantial evidence supports Muncy's conviction for felonious assault. First, we disagree with Muncy's argument that the state "failed to prove the Defendant-Appellant caused serious physical harm." Brief of Defendant-Appellant at 9. In relevant part, "serious physical harm" means either of the following: (1) "[a]ny physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity"; or (2) "[a]ny physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5)(c) & 2901.01(A)(5)(e).

> "The degree of harm that rises to [the] level of 'serious'
> physical harm is not an exact science, particularly when the

> definition includes such terms as 'substantial,' 'temporary,'
> 'acute,' and 'prolonged.'"  *State v. Irwin*, [7th Dist.] No. 06
> MA 20, 2007-Ohio-4996, ¶ 37.  However, courts have found
> there was "serious physical harm" where the injuries caused
> the victim to seek medical treatment.  *State v. Sharp*, 12th
> Dist. No. CA2009-09-236, 2010-Ohio-3470, ¶ 11.

And here, Sergeant Hamilton testified that he was transported to a hospital and prescribed pain medication and muscle relaxants.  Sergeant Hamilton also testified that, because of his injuries, he missed a week of work and had to "either sit in [a] chair or go to bed."  Transcript at 155.  The state corroborated Sergeant Hamilton's testimony by introducing his medical records.  Accordingly, the jury could have reasonably concluded that Sergeant Hamilton suffered either (1) a temporary, substantial incapacity or (2) prolonged pain.  In other words, the jury could have reasonably concluded that Sergeant Hamilton suffered serious physical harm.

**{¶24}**  We also disagree with Muncy's argument that the state failed to prove he acted knowingly.  R.C. 2903.11(A)(1) provides that "[n]o person shall knowingly * * * [c]ause serious physical harm to another[.]"  "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature.  A person has knowledge of circumstances when he is aware that such circumstances probably exist."  R.C. 2901.22(B).  Here, we find that Sergeant Hamilton's testimony is substantial evidence that Muncy acted knowingly. Sergeant Hamilton testified to the following events:

Still following [Muncy], and then all the sudden he slams on

his brakes and stops in the middle of the road. * * * He stops

directly in the oncoming traffic lane.  And I stopped about

two to three car lengths behind him. * * * I honestly thought

he might get out and try to run off or -- you never know what

somebody's going to do, you know.  He might jump out of

the car with a gun or something. * * * But when he stopped

the car, what I done was I unsnapped * * * my weapon from

my holster and halfway drawled [sic] my weapon out just in

case something bad would go there, because I didn't know

what was going to happen.  Then I see the rear back up

lights come on. * * * I see the -- he starts squealing his tires,

coming back towards me.  He had it in reverse and he

rammed my -- my cruiser.  Transcript at 135-136.

Additionally, Sergeant Hamilton testified that Muncy rammed him "[h]ard -- pretty

hard[.]"  *Id.* at 136.

{¶25}  Sergeant Hamilton's testimony demonstrates that Muncy intentionally

drove into Sergeant Hamilton's cruiser.  First, Muncy waited for Sergeant Hamilton to

stop.  Then, Muncy put his own vehicle into reverse.  And finally, Muncy backed into

Sergeant Hamilton's cruiser with enough speed that it caused Muncy's tires to squeal.

{¶26}  Sergeant Hamilton's version of events differs sharply from Muncy's vague

and inconsistent account of the collision.  At one point, Muncy testified, "I don't know

what happened."  Transcript at 316.  But later, Muncy theorized that "[m]aybe the officer

hit the brakes and didn't hit them good enough and accidentally hit [Muncy's truck],

maybe that happened." *Id.* at 318. Muncy also denied that his truck and the cruiser "hit

hard[.]" *Id.* at 316. But when confronted with the damage to Sergeant Hamilton's

cruiser, Muncy changed his testimony about the force of the collision.

> Q. * * * Do you see that square area on his bumper?
>
> A. That's from the reese hitch of the back of the truck;
>
> correct.
>
> Q. And it's actually hit hard enough that it's cut out a little
>
> biscuit in the -- in the bumper, hadn't it?
>
> A. Yes, it has.
>
> Q. Okay. So we're not talking about -- these cars didn't roll
>
> into each other. You would agree with that, wouldn't you?
>
> A. I would agree to the point that I did not put it in reverse
>
> and ram him. Transcript at 317-318.

We have compared Sergeant Hamilton's testimony to Muncy's, and the jury did not lose

its way in finding Sergeant Hamilton's testimony more credible. Accordingly, there is

substantial evidence that Muncy deliberately backed into Sergeant Hamilton's police

cruiser.

**{¶27}** "[W]hen a defendant voluntarily acts in a manner that is likely to cause

serious physical injury, the factfinder can infer that the defendant was aware that his

actions would cause whatever injury results from his actions, or, in other words, that he

acted knowingly." *State v. Reed*, 8th Dist. No. 89137, 2008-Ohio-312, ¶ 10. *See also*

*State v. McDaniel*, 2d Dist. No. 16221, 1998 WL 214606, *7 (May 1, 1998), citing *State*

*v. Edwards*, 83 Ohio App.3d 357, 614 N.E.2d 1123 (10th Dist.1992). And here, we find that the following is likely to cause serious physical harm: deliberately ramming an automobile into another automobile at (1) either a high rate of speed or (2) with significant force. In making this finding, we are mindful of the threshold for establishing serious physical harm. We have held that even "a bruise can constitute serious physical harm because a bruise may satisfy the statutory requirement for temporary serious disfigurement." *State v. Jarrell*, 4th Dist. No. 08CA3250, 2009-Ohio-3753, ¶ 14. And at a minimum, automobile collisions frequently result in bruising, lacerations, and other injuries that cause pain or incapacitation. Therefore, because the evidence demonstrates that Muncy acted in a manner that was likely to cause serious physical harm, the jury could have reasonably concluded that Muncy acted knowingly.

**{¶28}** After reviewing the record, we find that Muncy's conviction for felonious assault is not against the manifest weight of the evidence. Here, the jury could have reasonably concluded that Muncy's guilt had been proven beyond a reasonable doubt. As a result, we overrule Muncy's third assignment of error. Having overruled all of his assignments of error, we affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

Harsha, J., concurring

{¶29} I concur in judgment and opinion on the first and second assignments of error. However, I concur in judgment only on the third assignment of error because I do not agree that the mere presence of a bruise, without more, is evidence of serious physical harm.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that Appellant pay the costs herein taxed.

The Court finds that there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Abele, P.J.:  Concurs in Judgment & Opinion.
Harsha, J:   Concurs in Judgment & Opinion as to Assignments of Error Nos. 1 & 2.
             Concurs in Judgment Only as to Assignment of Error No. 3 with Opinion.


For the Court


BY:  _____
     Roger L.  Kline, Judge




## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No.  14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**